AMERICAN PLATE GLASS CO. v. STRUTHERS-WELLS CO.

(Circuit Court of Appeals, Third Circuit. November 21, 1912.)

No. 1,522.

1. SALES (§ 354*)—AFFIDAVIT OF DEFENSE—SUFFICIENCY.

An affidavit of defense in an action on a contract to recover the purchase price of certain engines built and installed by plaintiff for defendant construed, and *held*, under the rules of the Pennsylvania practice, to fairly put in issue the averments of plaintiff's statement, so as to require evidence in support of the same and entitle defendant to introduce evidence tending to show the failure of the engines to meet the guaranties of the contract, and that for that reason they were not accepted, but were rejected by defendant after plaintiff had been given ample time and opportunity to make them comply therewith.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1005–1024; Dec. Dig. § 354.*]

2. APPEAL AND ERROR (§ 1041*)—PLEADING (§ 268*)—AMENDMENTS—WHEN ALLOWABLE.

Under the liberal rule as to amendments prevailing in the federal courts, and under the Pennsylvania practice, on the ruling of a trial judge that an affidavit of defense was insufficient to put in issue an averment of plaintiff's statement of claim, so as to entitle defendant to introduce evidence thereon, defendant should be permitted to amend his affidavit, where such amendment would not work injustice to plaintiff, but would be conducive to a fair trial of the action on the merits, and the denial of such permission was prejudicial error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4106–4109; Dec. Dig. § 1041;* Pleading, Cent. Dig. §§ 809, 810; Dec. Dig. § 268.*]

In Error to the Circuit Court of the United States for the Western District of Pennsylvania; Charles P. Orr, Judge.

Action at law by the Struthers-Wells Company against the American Plate Glass Company. Judgment for plaintiff, and defendant brings error. Reversed.

John S. Ferguson, of Pittsburgh, Pa., and J. E. Mullin, of Kane, Pa. (R. V. Lindabury, of Newark, N. J., of counsel), for plaintiff in error.

Patterson, Sterrett & Acheson, of Pittsburgh, Pa., and Heyn & Covington, of New York City (Thomas Patterson, of Pittsburgh, Pa., and Herbert A. Heyn and George B. Covington, both of New York City, of counsel), for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

GRAY, Circuit Judge. The writ of error in this case brings up for review a judgment recovered in the court below by the Struthers-Wells Company against the American Plate Glass Company, for $48,461.

The statement of claim sets forth a contract which consisted of a written proposal made by the plaintiff to the defendant under date of March 9, 1906, and accepted by the defendant March 24th of that

year. By this contract, the plaintiff undertook to manufacture and supply to the defendant four 600 horse power Warren gas engines, having 600 actual brake horse power, to be 11 feet in height, 7 feet 6 inches wide, 26 feet long, and to weigh approximately 150,000 pounds. The contract also stipulated in other respects, at great length, the details of the structure to be embodied in the engines contracted for. It was provided that one engine should be shipped 5 months after the date of the contract, and one engine each succeeding 20 days thereafter until the order should be completed, subject, however, to delays due to strikes, fires, accidents, or to any causes beyond its (plaintiff's) control. There were several guaranties contained in the contract, among which were the following:

"We guarantee each engine to be capable of delivering continuously 600 brake H. P. at a speed of 180 R. P. M. and one operating in natural gas containing not less than 1,000 B. T. U. per cu. ft. and carrying approximately full load, we guarantee the engines will not consume to exceed 12 cu. ft. of natural gas per brake horse power per hour.

"We also guarantee that each engine will be capable of operating for a short time with a load 10% above its normal rating, and that when driven 25-cycle alternating current generators in multiple, the engines will be capable of running in parallel with a variation in angular velocity not exceeding 2½ electrical degrees."

There were also guaranties for workmanship, material, etc. Plaintiff also stipulated that after engines had arrived at destination, they would furnish a rigger to superintend the work of placing the engines on foundations; also the services of a capable erecting engineer to supervise the erection, piping and starting of each engine, defendant to prepare the necessary foundations in accordance with blue prints furnished by plaintiff. The contract then provided for tests, as follows:

"After all of the engines have been completely installed and thoroughly prepared for operation, as determined by us, we are to have, if necessary, 60 days for trial runs, tests, and any other work that we consider necessary to put the engines in such condition as will enable them to fulfill contract guaranties hereinbefore mentioned.

"During the first 30 days of the time specified, customers are to furnish us, free of all expenses, the necessary water, gas, and oil that we require for operating the engines. If it should be necessary for us to operate the engines for trial runs, tests, etc., during the second 30 days of the time specified, we agree to pay customers 8c. per thousand cubic feet for all natural gas required by us; also agree to reimburse them for their actual cost of water and oil furnished by them to us for operating the engines.

"As soon as possible after engines have been installed and pronounced ready for operation by us, there is to be an official test, participated in by both customers and engine builders, and if this test should prove that all contract guaranties have been fully met, the entire installation is to be accepted by you.

"If each and every one of the contract guaranties hereinbefore mentioned are not fully met, we are to be allowed the opportunity of making other official test or tests at any time that we may desire during the 60 day trial period, furnishing customers information, at least two days in advance, of our intention to make such tests; and if any of these tests show that the engines are capable of fulfilling contract guaranties, engines are to be accepted. If, however, we should require more than the 60 days above specified for test purposes, all time over and above the 60 days prescribed is to be paid for by us, and we hereby agree to pay for same at the rate of $200 per day, provided

'customers' plant is fully equipped in every detail and ready for operation, but cannot be operated solely by the failure of engines to operate in accordance with contract guaranties.

"The duration of this extended time of test for which we agree to indemnify customers at the rate specified, may be terminated at any time by us by giving written notice to customers that we wish to abandon the installation without securing further time for testing. And in consideration of our being relieved of all responsibility in connection with the contract, excepting the payment of $200 per day for the extended time of test period consumed by us, we will allow you the privilege of retaining the engines in your plant for a period of time sufficient to enable you to replace any or all of the engines of other make, it being understood that the engines in such event are not to remain in your plant for a period of time longer than six months from date of our giving you notice that we wish to terminate the trial period. And during the period of time that the engines are being used by you in accordance with this agreement, we will furnish to you, at our expense, a competent engineer to supervise their care and operation."

The price of the engines, as described, was stated to be $68,000; "two-thirds of purchase price on completion of satisfactory test, establishing the fulfillment of all contract guaranties; balance 30 days thereafter." The statement of claim then proceeds to allege performance by the plaintiff of its contract, by the shipping and installation of said engines, fittings and fixtures, beginning on or about the month of March, 1907, and that the same were by the defendant erected on foundations on its premises and connected by defendant with its machinery, and thereafter used and employed by defendant in connection therewith in its business; "that thereafter, about the month of October, 1908, tests of the said engines were made, as provided in the contract, which showed that the engines complied with the terms of the guaranties, but the test for parallel operations on one of said engines not being completed on account of a grounded igniter, the plaintiff requested the opportunity to complete the same and tendered further performance of the contract, but the said defendant wrongfully and willfully forbade and prevented the plaintiff from further performance and discharged the plaintiff from so doing, and defendant did not and would not perform said agreement on its part to. be performed, and especially prevented the plaintiff from completing said tests and from further testing and from further performing said contract;" but that defendant nevertheless continued to use the said gas engine and is now using the same, etc.; "that the defendant, although duly requested, has refused and neglected to pay the said sum of $68,000, or any part thereof, except the sum of $25,-000, paid in December, 1907, and in January and March, 1908," and suit is brought for the balance.

The defendant in due course filed its affidavit of defense, under the rules of practice obtaining in the state of Pennsylvania, a practice adopted by the rules of the Circuit Court of the United States for the Western District of that state, and afterwards entered its plea of non assumpsit, set-off, and the special matter set forth in the said affidavit of defense. Among the rules referred to is the following:

" * * * Also in all actions of assumpsit, the plaintiff's statement of claim may be verified by affidavit; and if so verified, the defendant's affida-

vit of defense or his affidavit in traverse thereof, shall be deemed and taken to be a pleading in the case, and upon trial no evidence on the part of the defendant shall be admitted in defense except such as may be alleged in his affidavit; and such items of claim and material averments of fact of the plaintiff's statement as are not directly and specifically traversed and denied by the defendant's affidavit, shall be taken as admitted. * * * "

[1] The case afterwards came on for trial. The plaintiff offered no evidence, other than the averments of its statement of claim, which it contended were not controverted or denied in the affidavit of defense. These averments, seven in number, were especially recited and called to the attention of the court. The first three, relating to the incorporation and citizenship of plaintiff and defendant, respectively, and to the copy of the contract annexed to the statement of claim being a true copy, were not denied by defendant and not objected to as proof of the matters averred. Upon the fourth, fifth, sixth and seventh of these averments, as not being controverted or denied in the affidavit of defense, the plaintiff rests for proof of its claim. They are as follows:

"Fourth: That the plaintiff manufactured and shipped to the defendant four gas engines, with fittings, fixtures and repair parts, and the said engines, fittings and repair parts were, beginning in or about the month of March or April, 1907, shipped and delivered to the defendant and received and assembled by the defendant, and were by it erected on foundations on its premises and connected by defendant with its machinery, and thereafter used and employed by it in connection therewith in its business.

"Fifth: That on or about the month of October, 1908, tests of the said engines were made, as provided in the contract.

"Sixth: That the plaintiff requested an opportunity to complete the test, and tendered further performance of said contract, but said defendant forbade and prevented the plaintiff from further performance, and discharged the plaintiff from so doing, and especially prevented the plaintiff from completing the said tests, and from further testing, and from further performing the said contract.

"Seventh: Nevertheless, defendant continued to use said gas engines, fittings, fixtures and repair parts, and is now using the same in its manufactory and in its business."

Upon the admission of these meager averments in evidence, after objection on the part of the defendant, the plaintiff rested its case, producing, or offering to produce, no other testimony in addition thereto or in support thereof.

The defendant, after refusal of its motion for nonsuit, proceeded to examine certain witnesses in its behalf and produce evidence in support of the affirmative allegations set up by it in its affidavit of defense. It also made various offers of testimony by certain witnesses and of other evidence in support of these allegations, which were refused by the learned judge of the court below, who thereupon instructed the jury that, upon the pleadings, they should find a verdict for the plaintiff, affirming the plaintiff's point to that effect and overruling the points submitted by the defendant.

The remarks with which the learned judge accompanied this instruction, as well as the opinion delivered by him on the motions for a new trial and for judgment non obstante veredicto, show the theory upon which the case was disposed of. That theory was that the facts

essential to the plaintiff's recovery were set forth in the statement of claim and were not denied in the affidavit of defense, and therefore, under the rule of the court to which we have above referred, such facts were to be taken as admitted and entitled the plaintiff to a verdict for the amount claimed. After the plaintiff had closed its case, by calling the attention of the court to these statements of its affidavit of claim as constituting the evidence on which it relied, defendant's counsel moved for leave to amend its affidavit of defense by a supplemental affidavit, stating

"that at the time the original affidavit of defense was filed, by inadvertence no reference was made to the tests alleged in the plaintiff's affidavit of claim as having taken place in October, 1908; that said tests were made and it was developed that the said engines were incapable of fulfilling the guaranties contained in the contract and as defendant expects to be able to prove, said engines could not as they then were, without being substantially redesigned and rebuilt, fill the requirements of the contract."

The affidavit then proceeded to state that for this reason, on November 19, 1908, defendant declined to permit any other or further tests, and on December 8, 1908, proceeded to make contracts for engines to supply the place of plaintiff's engines, and about that time notified the defendant that said engines were rejected, and requesting it to take them off defendant's premises. The court refused to allow the original affidavit of defense to be so amended, and, on the ground that the defendant had not by its original affidavit put the principal, if any, of the averments of fact contained in the plaintiff's statement at issue, refused several important, and to the defendant vital, offers of proof as being irrelevant to any issue in the case. It is necessary, therefore, to examine with some care the frame and substance of the defendant's affidavit.

After stating that the said defendant had a full, just and legal defense to the whole of the claim of the plaintiff in this case, and also a just and legal counterclaim against the plaintiff, the affidavit proceeds to state the nature and character of the defense. It admits that a contract was made between the parties on or about March 9, 1906, and that the copy attached to plaintiff's claim was true and correct. It states that under the terms of the said contract, the plaintiff was bound to deliver the engines, etc., therein specified,—the first on August 9, 1906, the second on August 29, 1906, the third on September 18, 1906, and the fourth on October 8, 1906; yet, in point of fact, the first engine was not delivered until the month of April, 1907, and the other three engines were delivered from time to time thereafter, through a period of four or five months. The affidavit further says that there were no strikes, accidents, or delays as would justify or excuse the plaintiff in delaying the delivery until the dates above named, and that defendant made no agreement or promise condoning the delay. It is admitted, however, that if the engines when delivered had conformed to the requirements of the contract, the defendant would have accepted and paid for the same. But affiant avers that said delay was largely caused by plaintiff's efforts to make the said engines conform to the requirements of the contract. The affidavit further says that, although

the first engine was delivered on the premises of the defendant in the month of April, 1907, and the remaining three during the period of four or five months thereafter, the said plaintiff, through its agents and employés, took entire charge and control of the engines and was engaged for its own purposes in adjusting the same, in order to make them comply with the requirements of the contract, and such control continued until about the close of the month of February, 1908, when the plaintiff, under the provisions of the contract in that behalf, gave written notice to the defendant that they were ready for a trial run of the engines; and that said provision of the contract was as follows:

"Test: After all of the engines have been completely installed and thoroughly prepared for operation as determined by us (plaintiff), we are to have, if necessary, 60 days for trial runs, tests, and any other work that we consider necessary to put the engines in such condition as will enable them to fulfill contract guaranties hereinbefore mentioned."

Upon such notice being given by plaintiff, defendant requested such trial runs to be delayed until it could have present its consulting engineer, Professor Charles E. Lucke, and said request was acquiesced in, engines remaining in control of plaintiff in the meantime. It is further averred that the said Lucke arrived on March 16, 1908, and made an examination of the engines, the result of which was that he reported that the same in many particulars did not fulfill the requirements of the contract, and that as they then were, could not fulfill such requirements; that the said report was in writing, and defendant craved leave to produce the same upon the trial.

The affidavit further states that, upon the reception of said report by defendant, it submitted the same to plaintiff, and that plaintiff, after examination thereof, agreed with said Lucke in substance as to the condition of the engines and abandoned its request for a trial run of the same at that time, and requested permission to modify the engines so as to meet the deficiencies pointed out, and that plaintiff then proceeded practically to rebuild the working parts of the engines, substantially redesigning the same and continuing for that purpose to have possession and control thereof, and that the plaintiff made no further request for any further trial runs of the engines until late in September, 1908. The affidavit then states that, on September 23, 1908, the plaintiff, being represented by its agent duly authorized for that purpose, met Professor Trinks, a mechanical engineer of good repute, connected with the Carnegie Technical Institute of Pittsburgh, and trial runs of said engines were made, said trial runs continuing over several days; that the result thereof showed that the engines did not comply with the requirements of the contract, the affidavit specifying the respects in which they failed to do so.

The affidavit also avers that at the time of making the trial runs, it was admitted and agreed by the representative of the plaintiff present thereat, that the engines did not and could not comply with the aforesaid guaranties required by the contract. Affiant therefore avers that the plaintiff wholly failed to comply with its contract, and that it is entitled to recover no compensation therefor. And affiant further denies that the parallel operators on one side of said engines were

not completed on account of grounded igniter, and avers that it was recognized and admitted that the engines as they then stood were not capable of complying with the parallel run test. The affidavit then admits that shortly after the trial runs were made, plaintiff requested defendant, first, to give it the entire use of engines for a period of 60 days or less, in order to make changes or improvements as would bring the engines up to the required power; and subsequently requested that one engine be turned over to it for the purpose specified in the first request, and that then, when plaintiff was ready for capacity and economy tests, it asked to be permitted to give 2 or 4 days' notice for the running of the test. Affiant admits that defendant refused to comply with this request, but avers that it had good reason to make such refusal, because more than 2 years had elapsed from the time when the last of the said engines was to be delivered, according to the requirements of contract, and more than 1 year had elapsed since the last of the said engines had been, in point of fact, placed upon said premises, and plaintiff, in the latter part of February or first of March, 1908, had announced its readiness for trial run and had abandoned it because of the confessed incapacity of said engines to comply with the contract; that 6 months then elapsed, during which time the plaintiff practically redesigned and reconstructed the said engines, and at the end of that time again announced itself ready for trial runs, and again the engines failed to comply with the terms of the contract; and the condition of the business of defendant, which was well known to plaintiff, was such that it had already suffered great damage by reason of the delay and was likely to suffer more. The affidavit then avers, by way of counterclaim, that defendant is entitled to recover from said plaintiff the sum of $25,000, paid to the plaintiff between December 3, 1907, and March 12, 1908, each payment being made under the terms of a receipt, the language of which was, in part, as follows:

"And it is expressly understood and agreed that the making of payment by you at the present time is not to be taken by us in any extent as an indication by you of your approval, disapproval, acceptance or rejection of any of the engines furnished you in accordance with contract dated March 9, 1906."

The defendant further states in said affidavit that the said engines were essential to the operation of the plant of the defendant, and that defendant was dependent upon the fulfillment of the contract for the power necessary to the complete operation of its plant; that during the period beginning on the 23d of March, 1908, when plaintiff voluntarily abandoned the trial runs which it had declared its readiness to make, for the reasons already stated, and ending on the 23d of September, 1908, when it again admitted that the engines were not in compliance with the contract, being a period of 6 months, the actual loss to said defendant, by reason of not having said engines, as of right it was entitled to under the terms of said contract, was at least the sum of $200 a day during said period of 157 working days, to the payment of which it was entitled under the clause of the contract already quoted, and affiant avers that during said period of 6 months, defendant's plant could not be operated, so far as the power

department was concerned, solely by reason of the failure of the engines to operate in accordance with the contract guaranties, and the affiant claims for the defendant, after the failure of the tests, the right to use the said four engines, because, the plaintiff having failed to comply with the requirements of the contract, it had the right under the contract to hold said engines and use the same until it could make satisfactory arrangements to supply their place. Affiant also denies that the said engines were ever delivered in accordance with the said contract.

From the foregoing summary, we think it will apppear that the affidavit of defense sufficiently states, though in narrative form and somewhat inartificially, an affirmative defense to the plaintiff's claim. Though specific and technical denials of plaintiff's statement as to performance of the contract on its part, may not in all cases have been made, the facts alleged and set up in the affirmative defense, indirectly and from necessity traverse all the statements made by the plaintiff, essential to establishing liability on the part of the defendant under the contract. Indeed, a categorical denial of the averment as to delivery and of the averment as to tests, might have been objectionable as negatives pregnant. Defendant could not deny a physical delivery, but its statement of when and how that delivery was made, and the circumstances attending it, and its reference to the contract in that regard, was a substantial denial or challenge of the truth of plaintiff's averment that a delivery was made in accordance with the terms of the contract. The theory of the plaintiff, as shown by its statement of claim and presentation of the case, is, as we have pointed out, that no test was demanded or had by the parties under the contract until the October test, as stated in its claim, and that therefore the 60 days' time for adjusting any default in the engines, provided for in the contract, did not commence to run until the date of that test. The defendant, on the other hand, in its affidavit, makes a statement as to the occurrences subsequent to the contract, and as to the conduct of the parties, in necessary contradiction of the essential averments upon which the plaintiff's theory of its case is founded. Defendant's theory of the case, dependent upon the truth of the facts averred in its affidavit, is that, after a long and inexcusable delay in the delivery of the engines, disregarded though not condoned by the defendant, the plaintiff made delivery of the first engine in April, 1907, delivering the last in August or September of that year, and after occupying the interval in endeavoring to make the engines meet the guaranties of the contract, the plaintiff, late in February, 1908, demanded for the first time the test provided for in the contract, and the same was practically held in March, though no trial run was actually made, for the reason that plaintiff acquiesced in the opinion of defendant's expert, that the engines were not in a condition to make such a trial. This fact having been reported to defendant and acquiesced in by plaintiff, it is contended by defendant that from the 23d of March, the date of the report, the 60 days, within which repairs and readjustments of machinery could be made by

plaintiff under the terms of the contract, began to run, and that after the 60 days expired, on the 23d of May, the further time consumed by plaintiff was at its own expense. The defendant also states that a test was made on the 23d of September, at plaintiff's request, which demonstrated the insufficiency of the engines, after all these months in which it is alleged they were being redesigned and rebuilt, to fulfill the guaranties of the contract. This test is not alluded to in the plaintiff's statement of claim, which refers only to an alleged test had in October following. It is with reference to this so-called test that the defendant sought leave to file a supplemental affidavit, averring that reference to it in the affidavit of defense had been omitted by inadvertence. Defendant claims, however, in his argument, that this so-called test was a mere continuance of the abortive test of September, granted by indulgence of the defendant, and that all further tests were thereafter refused, on account of the failure of the tests theretofore made to meet the guaranties of the contract. Defendant claims in argument that the facts show that more than a reasonable time was granted to plaintiff to make good the requirements of the contract, and that the plaintiff was not entitled to more than a reasonable time after the expiration of 60 days from the first test, in which to demonstrate its ability to fulfill the guaranties of the contract.

We think this contention is correct, and that under the terms of the contract, plaintiff was not entitled to any period he chose to demand after the expiration of the 60 days from the 23d day of March, 1908, if that shall be found to be the date of the first test, but is confined by the law of the contract to what a jury shall determine would be a reasonable time after the 60-day period for the performance of its contractual obligation.

It therefore follows that whether defendant's conduct amounted to an acceptance of performance by the plaintiff under the contract depends upon whether the defendant is able to support, by proof, the facts stated by it in its affidavit, by way of defense. Whether there was such an acceptance of performance by the defendant; whether a reasonable time had elapsed after the 60 days mentioned in the contract, beyond which the plaintiff might not, without the assent of defendant, continue its experiments in bringing the engines contracted for up to the guaranties and stipulations of the contract; whether there really was practically a test under the terms of the contract had in the month of March, 1908, and whether plaintiff was entitled, by way of recoupment, to the amounts claimed by it, were questions for the jury.

The character and requirements of an affidavit of defense in Pennsylvania practice are thus stated by Mr. Justice Mitchell, speaking for the Supreme Court of Pennsylvania, in Andrews v. Packing Co., 206 Pa. 370, 55 Atl. 1059:

"An affidavit of defense should set forth fully and fairly, facts sufficient to show prima facie, a good defense, and if it fails to do so, either from omission of essential facts, or manifest evasiveness in the mode of statement, it will be insufficient to prevent judgment. But if not deficient in either of these respects, and on its face fairly, setting forth a prima facie defense, it is not to be subjected to close technical examination as if it was a special

plea demurred to. Its office is to prevent a summary judgment and for that purpose a showing of a defense, with certainty to a common intent, is sufficient."

No rule of court should be so administered as to contravene or obscure the spirit of this clear exposition of the office of an affidavit of defense.

The views we have expressed are largely determinative of the questions raised by the assignments of error.

The second assignment is to the admission, as evidence under the rule, of the following statement in the affidavit of claim:

"That the plaintiff requested an opportunity to complete the same (i. e., the tests alleged by plaintiff to have been made in October, 1908), and tendered further performance of said contract, but the said defendant forbade and prevented plaintiff from further performance and discharged the plaintiff from so doing, and especially prevented plaintiff from completing the said tests and from further test and from further performing the said contract."

Defendant's counsel objected to the admission of this statement, on the ground that the same had not been admitted by its affidavit of defense, but was in effect and substance denied by the averments thereof. We think that defendant's objection should have been sustained. The following paragraph, recited in the summary we have made of the affidavit of defense, sufficiently answers, by confession and avoidance, the only way in which it could have been answered, this statement of the affidavit of claim. It is as follows:

"Affiant admits that, shortly after said trial runs (those in the last days of September, 1908) were made, the plaintiff requested the defendant, first, to give it the entire use of the engines for a period of 60 days or less, in order to make such changes or improvements as would bring the engines up to the required power, and subsequently requested that one engine be turned over to it for the purpose specified in the first request, and that then, when plaintiff was ready for capacity and economy tests, it asked to be permitted to give 2 or 4 days' notice for the running of the test; and affiant admits that defendant refused to comply with said request, but avers that it had good reason to make such refusal; that more than 2 years had elapsed from the time when the last of the said engines was to be delivered according to the requirements of the contract, more than 1 year had elapsed since the last of the said engines had been in point of fact placed upon the said premises, and plaintiff, in the latter part of February or first part of March, 1908, had announced its readiness for trial run, and had abandoned it because of the confessed incapacity of said engines to comply with the contract. Six months then elapsed, during which time the plaintiff practically redesigned and reconstructed the said engines, and at the end of that time again announced itself ready for trial runs, and again the engines failed to comply with the terms of the contract; and the condition of the business of the defendant, which was well known to the plaintiff, was such that it had already suffered great damage by reason of the delay, and was likely to suffer more."

It will be remembered that the evidence offered by defendant, and rejected, tended to show that the test on October 28th was a mere continuance, by indulgence of the defendant, of the test concluded in the last days of September, and that the refusals of further tests after the September test, referred to in the passage just quoted from the affidavit of defense, may well cover and refer to the refusals in October, as alleged by complainant. However this may be, we

are of opinion that the amendment to his affidavit of defense, offered
by defendant to correct what is alleged to have been an inadvertence,
in making special reference to the tests alleged in plaintiff's affidavit
of claim as having taken place in October, 1908, should have been
allowed, and not rejected, by the court below, for reasons hereinafter
more fully stated.

The defendant offered in evidence the following written notice, ad-
dressed by the plaintiff to the defendant:

"Warren, Pa., March 6, 1908.

"American Plate Glass Company, Kane, Pa.

"Gentlemen: After giving the matter quite careful consideration we have
decided that we would like to make a test of the four (4) 600 H. P. gas en-
gines at your James City plant within ten days from present date. If for
good reasons of your own you prefer this test to be made on the 13th and
14th instead of the date specified we would be pleased to arrange accordingly;
or, if a few days later than the date specified would better suit your con-
venience, we will be pleased to await your convenience. We trust that you
will provide all the necessary instruments and equipment necessary to se-
cure absolutely reliable data from the test concerning capacity, economy and
regulation.

"Yours truly,        [Signed]  G. C. L.————, Secy. & Gen. Mgr."

Defendant then, in connection with this notice, offered the deposi-
tion of Charles E. Lucke, mechanical engineer referred to in the affi-
davit of defense, who, on behalf of the defendant and in pursuance
of the said notice, made examination of the engines on defendant's
premises in company with the representative of the plaintiff. The
deposition was to the effect that the said engines did not come up
to the guaranties of the contract and were in other respects defective,
and that complainant company acquiesced in this opinion and aban-
doned an actual trial run at the time fixed by it. This deposition
was offered for the purpose of showing that in point of fact, at the
date fixed by plaintiff for the tests, the tests were abandoned by
plaintiff, because the engines were not in condition to stand the test,
and also because it tended to show that the 60 days' time given by
the contract for trial runs should be computed from the date of said
abandonment. This offer was refused by the court below, upon the
objection of the plaintiff. Counsel for plaintiff objected to the offer
as not being in accordance with any issue raised by the pleadings, the
statement of claim showing only a request for test made in October,
1908, and no issue raised by the pleadings as to any other alleged
previous test. The court, sustaining this objection, refused to admit
the deposition. In this, we think the court below was in error, as
the deposition offered in connection with the letter addressed by plain-
tiff to defendant, dated March 16, 1908, tended to support the affirma-
tive matter alleged in defense by the defendant in its affidavit, and
tended to throw light on the situation of the parties at the time of
the tests in October, referred to in the affidavit of claim.

Even conceding that the bald statement by plaintiff in its affidavit
of claim, that a test was had on October 28th, and that defendant
refused to allow any other or further test to have been admitted by
the silence of the affidavit of defense in that regard, that admission
did not extend to the legal conclusion deduced from these facts by

plaintiff, and defendant could not with justice be excluded from opportunity to make independent averments of prior occurrences not mentioned by the plaintiff, which tended to negative such legal conclusions and to explain the facts claimed to have been thus admitted by the defendant. We do not think the rule of court above referred to should have been so applied or administered as to have excluded the testimony thus offered by the defendant.

What we have said in regard to the refusal of this deposition, in connection with the letter of March 6, 1908, is applicable to the offers of evidence set forth in the fifth and sixth assignments of error, and for the refusal of which by the court below, error was assigned. These offers were made for the stated purpose of showing that the 60 days for trial runs, tests, and any other work, as provided for in the contract, began to run on or about the 16th day of March, 1908, and had fully expired at the expiration of 60 days thereafter, before any request was made for further tests; and for the purpose of showing that from a time prior to the delivery of any engine down until after the 1st of January, 1909, defendant's plant was fully equipped and ready for operation, except so far as it was interfered with by the defects of the engines in question; and for the purpose of showing that the tests of October, 1908, developed the fact that the engines in question could not be made capable of complying with the guaranties of the contract, without substantially an entire rebuilding of the engines; and for the purpose of showing that ample and reasonable time was given by defendant to plaintiff to comply with the contract in question; and for the further purpose of negativing any inference of a waiver or prevention of the performance of a contract arising from the matters given in evidence by the plaintiff. Evidence for these purposes and in support of the affirmative defenses set forth in the affidavit of the defendant, or tending to negative and explain the statements of the affidavit of claim, should not have been excluded from the consideration of the jury.

So also as to the offers of proof, the refusal of which are made the subject-matter of the eighth assignment of error. The evidence there offered was for the stated purpose of showing, first, that the plaintiff had full 60 days provided for in the contract for trial runs, tests, and any other work which it might consider necessary for putting the engines in a condition to fulfill contract guaranties; second, for the purpose of showing that the plaintiff was not in any way prevented from the performance of the contract, but on the contrary was unable to perform; third, for the purpose of showing that the defendant was justified in refusing to let the plaintiff work further with the said engines, and also for showing that plaintiff had a reasonable time after the expiration of the 60 days from the alleged test, on or about March 16, 1908, if the occurrence of such test should be established. Expert testimony was also offered, tending to show that the engines in question not only failed at the tests in December, 1908, and at other times, to come up to the contract guaranties, but that they were, by reason of organic defects in structure, incapable of being made to fulfill such guaranties.

201 F.—2

Objections to such testimony by counsel for the plaintiff were sustained by the court, and the refusal of the court to permit such testimony having been excepted to, is covered by the assignments of error. We think such testimony should have been admitted, and that there was error in its exclusion. We can discover nothing in the relation of the affidavit of defense to the affidavit of claim that would warrant the exclusion of any evidence on the part of the defendant, tending to show the failure of the engines to meet the requirements of the contract, or explain the circumstances under which and to what extent engines were used by defendant, and pertinent to the question, whether or not such use amounted to an acceptance. The use of an article by a purchaser does not necessarily imply an acceptance of it. It is a question in this case for the jury, whether the use by the defendant of the engines erected on its premises amounted to an acceptance under the contract. In this respect, the notice of December 10, 1908, which the defendant offered to prove, was pertinent and should have been admitted.

[2] The assignments of error are unnecessarily numerous. Most of those to which we have not referred specifically are sufficiently covered by what we have already said as to the assignments particularly discussed. The seventh assignment, however, challenges our special attention. It is as follows:

"The court erred in refusing to permit the defendant to file the following amendment, to wit:

"'Before me, the undersigned authority, personally came James T. Riley, who, being duly sworn, says: That at the time of the transactions involved in this case he was secretary of the defendant company, and was fully informed of all matters connected with the transactions involved in this case; that at the time the affidavit of defense in this case was filed, by inadvertence, no reference was made to the tests alleged in the plaintiff's affidavit of claim as having taken place in October, 1908; that said tests were made and it was developed that the said engines were incapable of filling the guaranties contained in the contract, and as defendant is informed and believes, and expects to be able to prove, said engines could not as they then were, without being substantially redesigned and rebuilt, fill the requirements of the contract. That defendant, therefore, on November 19, 1908, declined to permit any other or further tests, and on December 8, 1908, proceeded to make contracts for engines to supply the place of plaintiff's engines, and subsequently, on or about December 10, 1908, notified the plaintiff that the said engines were rejected, to take them off defendant's premises, and demanded a return of the $25,000 theretofore paid, and that they were so rejected because they were not such engines as were required by the contract. Affiant makes this affidavit as a supplemental affidavit of defense.'

"[Signed] James T. Riley."

This amendment was offered at the trial, when the plaintiff had rested, after offering as its evidence the statements above referred to in its affidavit of claim. Counsel for the plaintiff objected to the filing of this amendment, "in so far as it may seek to change the admissions of the affidavits now entered on the trial of this case under the rule of court No. 1 (above referred to), for the further reason that no expediency (sic) has appeared in the proof of the defendant where such amendment is necessary; also, because the affidavit proposed to be filed is directly contradictory in terms to the affidavit of defense

now on record.". For these reasons, and for the additional reason that it came too late, the court refused the motion of the defendant, and directed that the paper be filed, but not received as an affidavit of defense.

We do not think that these objections, under all the circumstances of the case and the manifest hardship to which the defendant was being subjected in the presentation of the case, were sufficient to justify the action of the court in the premises. The inadvertence which the affiant sought to correct by this proposed amendment, while it might injuriously affect the case of the defendant, its correction worked no injustice to the plaintiff. That tests were made in October, which failed, and that permission for further tests were refused by defendant, as stated in the affidavit of claim, was admitted in the proposed amendment. So far, at least, there was express admission, instead of tacit admission, of plaintiff's statement in its affidavit of claim; but it was vital to defendant's case that it should be allowed to show how the test failed, and why permission for further tests was refused. Courts are reluctant to shut out the light from any aspect of a litigated case, as is amply evidenced by the liberal rules permitting amendments to pleading, which in modern times have been adopted by the courts, and so sanctioned by legislative authority as to indicate a public policy in that regard. The burden is generally on the one who objects to an amendment apparently pertinent and important, to show cause why it should not be granted. We do not think that in this case sufficient reason has been shown for the refusal of the court to grant the amendment. It seriously changed no issue and imposed upon the plaintiff no burden which, if it were able to support at all, it was not prepared to support when the amendment was offered. By this amendment, the plaintiff incurred no disadvantage, except that of permitting defendant to avail itself of a defense to which it was justly entitled.

It would more often than not defeat the ends of justice, were we to apply the strict rules applicable to a special traverse to such an affidavit of defense, which, by the rule of court here in question, is made a pleading in the case, and utterly deprive the more liberal rules of modern pleading of their value. We think, therefore, that the refusal of the court below to permit the original affidavit to be amended, as asked for, was manifest error. We think the exercise of its discretion by the court below, in refusing the amendment on the ground stated, worked an injustice to the defendant so serious as to warrant this court in reviewing the same. The rule of court and the Pennsylvania act of 1806 expressly authorize such amendment upon terms that shall prevent injustice being done to the adverse party, and these amendments are authorized both before and during the trial. The seventh assignment of error is therefore sustained.

For the reasons stated, the judgment below is reversed, with directions for a venire de novo.