Marenette v. Abbott Laboratories

**UNITED STATES COURT OF APPEALS**
FOR THE SECOND CIRCUIT

_____

August Term, 2017

(Argued: August 23, 2017      Decided: March 23, 2018)

Docket No. 17-62-cv

_____

SARA MARENTETTE, MATTHEW O'NEIL NIGHSWANDER, ELLEN STEINLIEN, ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,

*Plaintiffs-Appellants,*

— v. —

ABBOTT LABORATORIES, INC.,

*Defendant-Appellee,*

_____

B e f o r e:

POOLER and LYNCH, *Circuit Judges*, and COGAN, *District Judge.*[*]

Three parent consumers brought a putative class-action suit against Abbott

Laboratories, Inc., claiming that Abbott had violated New York and California

_____

[*] Judge Brian M. Cogan, of the United States District Court for the Eastern District of New York, sitting by designation.

law by including ingredients in its organic-labeled infant formula that are not permitted under the federal Organic Foods Production Act, 7 U.S.C. §§ 6501-6524. The United States District Court for the Eastern District of New York (Pamela K. Chen, *J.*), dismissed plaintiffs' suit, concluding that their claims were preempted by the Act. Because we agree that plaintiffs' claims are preempted, we AFFIRM the judgment of the district court.

YVETTE GOLAN, The Golan Firm, Washington, DC (D. Greg Blankinship, Todd Seth Garber, Finkelstein, Blankinship, Frei-Pearson & Garber, LLP, White Plains, NY; Kim Richman, The Richman Law Group, Brooklyn, NY, *on the brief*), *for Plaintiffs-Appellants* Sara Marentette, Matthew O'Neil Nighswander, and Ellen Steinlien.

SCOTT GLAUBERMAN (Shawn J. Gebhardt, *on the brief*), Winston & Strawn LLP, Chicago, IL, *for Defendant-Appellee* Abbott Laboratories, Inc.

Chad A. Readler, Acting Assistant Attorney General, Mark B. Stern, Joshua M. Salzman, United States Department of Justice; Carrie F. Ricci, Mai P. Dinh, United States Department of Agriculture, *for Amicus Curiae* United States Department of Agriculture, *in support of neither party*.

COGAN, District Judge:

Three parent consumers ("Parents") filed a putative class-action complaint against Abbott Laboratories, Inc., alleging that Abbott violated New York and California statutes and common law by advertising and selling Similac infant formula branded as organic and bearing the "USDA Organic" seal when the

formula contained ingredients not permitted by the Organic Foods Production Act ("OFPA" or "the Act"). The United States District Court for the Eastern District of New York (Pamela K. Chen, *J.*), dismissed Parents' suit, concluding that their state-law claims were preempted by the Act. *Marentette v. Abbott Labs., Inc.*, 201 F. Supp. 3d 374, 376 (E.D.N.Y. 2016). We agree that Parents' claims are preempted, and therefore AFFIRM the district court's judgment dismissing the complaint.

## BACKGROUND

According to the operative first amended complaint, Parents purchased Similac Advance Organic Infant Formula at various times from August 2012 through August 2014. Parent Ellen Steinlien alleges that she purchased the formula approximately once per month at stores in California. Parents Sara Marentette and Matthew O'Neil Nighswander (who are married) claim that they purchased the formula in both liquid and powder form in New York and New Hampshire during the relevant time. The formula's packaging states that it is organic and displays the "USDA Organic" seal.

Parents allege that they purchased Similac Organic formula after seeing and relying on the word "organic" and the "USDA Organic" seal on the

packaging, and that these labels led them to believe that the formula was organic.

Parents allege that the Similac Organic formula was falsely labeled because it contains 16 ingredients[1] that are prohibited by the OFPA, and that the formula is therefore not organic.  Parents brought statutory consumer-protection claims, common-law breach-of-express-warranty claims, and common-law unjust-enrichment claims under New York and California law, all based on their false-labeling allegation.

Abbott moved to dismiss, arguing primarily that Parents' state-law claims were preempted by the Act under the doctrine of conflict preemption (specifically, obstacle preemption), because permitting Parents to sue under state law for a label authorized by a certification scheme enacted by Congress would thwart Congress's purpose in enacting that scheme.  Abbott also argued that Parents' claims were expressly preempted, along with other defenses.  Parents countered that their suit did not conflict with federal law because they in fact

---

[1] Parents' first amended complaint initially refers to 26 allegedly impermissible ingredients, but later describes only 16 such ingredients.  Parents' briefs before this Court cite the portion of the complaint that mentions 26 allegedly prohibited ingredients, but at other points their briefs refer to only 16.  As explained further below, this difference is immaterial because Parents do not allege that Abbott added any ingredients to its infant formula except those listed on the label, *see generally* First Am. Compl. ¶ 35, and whether those ingredients are permitted by the Act is a question of law.

sought to vindicate federal law through state-law causes of action. Parents also disputed Abbott's secondary arguments. Most significantly, they argued that the existence of an express preemption clause in the statute was strong evidence against implied conflict preemption.

After oral argument on the motion, the district court granted Abbott's motion to dismiss solely on conflict-preemption grounds. *Marentette*, 201 F. Supp. 3d at 376. Citing the Eighth Circuit's decision in *In re Aurora Dairy Corp. Organic Milk Marketing & Sales Practices Litigation*, 621 F.3d 781 (8th Cir. 2010), the district court concluded that Parents' challenge to the organic label on Abbott's products was in essence a challenge to the USDA-accredited certifying agent's certification decision itself, and that the state-law causes of action therefore posed an obstacle to Congress's objectives in enacting the OFPA. *Marentette*, 201 F. Supp. 3d at 381. The district court emphasized that the stated purposes of the Act, including "establish[ing] national standards" for organically produced products and "assur[ing] consumers that organically produced products meet a consistent standard," would be significantly undermined if Parents' claims proceeded. *Id.* at 382. According to the district court, the OFPA's enforcement and remedial scheme was further evidence that the statutory scheme Congress

enacted to create uniform national standards would be "significantly disrupted, if not thwarted, by a hodgepodge of potentially inconsistent State and federal court decisions on what constitutes 'Organic.'" *Id*. at 384. After the district court denied Parents' motion for leave to amend the complaint a second time, Parents appealed the order dismissing their first amended complaint.

This Court held oral argument on August 23, 2017. After oral argument, we solicited the views of the United States Department of Agriculture as *amicus curiae* on two questions related to the certification process and the USDA's regulations: (1) whether the certification process requires the certifying agent to review and approve the ingredients of the final product to be labeled organic, and (2) whether certification is co-extensive with statutory and regulatory compliance, that is, whether products made in accordance with a properly certified plan will necessarily comply with the OFPA. The USDA responded on October 6, 2017. Its *amicus* brief stated that certifying agents review and approve both the process and the ingredients of the final product to be labeled organic, but generally do not inspect or certify batches of products. The USDA also explained that certification is intended to be coextensive with compliance, but

that it may not be if a plan is improperly certified or if a producer or handler changes the plan after certification.

**DISCUSSION**

**I.    History of the Organic Foods Production Act**

Because the outcome of this case depends in large part on the content and scope of the OFPA, we begin with some background on the statutory scheme. Enacted in 1990, the OFPA directs the Secretary of Agriculture to "establish an organic certification program for producers and handlers of agricultural products that have been produced using organic methods."  7 U.S.C. § 6503(a). The Act defines its purposes as "(1) to establish national standards governing the marketing of certain agricultural products as organically produced products; (2) to assure consumers that organically produced products meet a consistent standard; and (3) to facilitate interstate commerce in fresh and processed food that is organically produced."  *Id.* § 6501.

Consistent with this statutory mandate, the USDA established the National Organic Program ("NOP" or "Program") to implement the OFPA.  Under the OFPA, a product may only be sold or labeled as organic if it was "produced and handled in compliance with an organic plan agreed to by the producer and

7

handler of such product and the certifying agent." *Id.* § 6504(3). Organic plans must be certified by an accredited certifying agent. *Id.* §§ 6503(d), 6504(3), 6514-6515. Exactly what this certification process entails is at the heart of this suit.

A producer or handler (such as Abbott)[2] seeking organic certification must write an organic plan describing all of the practices and procedures that it will perform as to the organic product, and must list each substance to be used as an input, so that the certifying agent can assess whether the plan complies with the OFPA. *Id.* § 6513; 7 C.F.R. § 205.201(a)(2). The USDA understands the term "input" to mean "all substances or materials used in the production or handling process." USDA Br. 5 (citing 7 C.F.R. § 205.2). This includes substances that are present in the final product (for example, the wheat in an organic-labeled cereal) and those that are incidental to the final product (such as the fertilizer used in the soil where the wheat used in an organic-labeled cereal is grown). *Id.*

---

[2] The OFPA refers to "producers" and "handlers." A "handler" is a "person engaged in the business of handling agricultural products," which means "receiv[ing,] . . . process[ing], package[ing], or stor[ing] such products." *See* 7 U.S.C. § 6502(9)-(10). And "processing" means "cooking, . . . mixing, . . . preserving, . . . or otherwise manufacturing, and includes the packaging, canning, jarring, or otherwise enclosing food in a container." *Id.* § 6502(17). Abbott is a handler of organic infant formula under the OFPA.

To be sold or labeled as organic, a product generally must have been produced and handled without the use of synthetic chemicals. 7 U.S.C. §§ 6504(1); 6510(a). But the OFPA authorizes the Secretary of Agriculture to create a "National List" of synthetic substances that are permitted in organic products. *See id.* §§ 6510(a)(1), 6517; 7 C.F.R. § 205.605(b). Because only those synthetic substances which are included on the National List may be used in organic-labeled products, certifying agents must consider whether any of the ingredients a producer or handler intends to include are synthetic, and must deny certification if they are not included on the National List.

Once the certifying agent has approved an organic plan, it performs an on-site inspection, during which it reviews all of the inputs and methods of production. *See* 7 C.F.R. §§ 205.402(a)(4), 205.403. If the certifying agent confirms that the applicant's operation complies with its proposed organic plan, the applicant is certified and may begin selling and labeling products made under that plan as organic, subject to annual reinspection. 7 C.F.R. § 205.403(a)(1). But if the certifying agent has reason to believe that the applicant is not complying with or is unable to comply with the organic plan, the certifying agent must note the non-compliance, and, if it is not corrected, must deny certification. *Id.* §

9

205.405; *see also id.* § 205.660(b) (certification may be revoked or suspended if certified operation fails to comply with the Act or its regulations).

The statutory scheme also includes enforcement mechanisms: a person who knowingly sells or labels a product as organic in violation of the statute is subject to civil monetary penalties imposed by the USDA, *see* 7 U.S.C. § 6519(c)(1), and anyone who makes a false statement to the USDA or a certifying agent may be criminally prosecuted. *See* 7 U.S.C. § 6519(c)(2). The National Organic Program itself can inspect certified producers and handlers, and can suspend or revoke certification if a certifying agent fails to take action against a non-compliant producer or handler, or if the Program independently determines that a producer or handler is not complying with the Act or its regulations. 7 C.F.R. § 205.660. The Program can also suspend or bar certifying agents who wrongfully or negligently grant certification. 7 U.S.C. § 6519(c)(5); 7 C.F.R. § 205.660.

## II.    Conflict Preemption

The district court granted Abbott's motion to dismiss based on conflict preemption. We review the district court's preemption analysis *de novo*. *See In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d 65, 96 (2d Cir. 2013).

Under the Supremacy Clause, "the Laws of the United States" are the "supreme Law of the Land." U.S. Const. art. VI, cl. 2. Congress therefore has "the power to preempt state law" through federal legislation. *Arizona v. United States*, 567 U.S. 387, 399 (2012). Congress can preempt state law expressly or implicitly. *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76-77 (2008).

Conflict preemption, one form of implied preemption, refers to situations where compliance with both state and federal law is a physical impossibility, or, as relevant here, where the state law at issue "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Arizona*, 567 U.S. at 399 (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). "What constitutes a 'sufficient obstacle' is 'a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects.'" *In re MTBE*, 725 F.3d at 101 (quoting *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 162 (2d Cir. 2013)).

When addressing federal preemption questions, "we have long presumed that Congress does not cavalierly pre-empt state-law causes of action," *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996), and therefore "start with the assumption that the historic police powers of the States were not to be superseded by the Federal

11

Act unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (quoting *Medtronic*, 518 U.S. at 485). "In light of this assumption, the party asserting that federal law preempts state law bears the burden of establishing preemption." *In re MTBE*, 725 F.3d at 96.

The presumption against federal law preempting state law is particularly strong when Congress legislates in a field traditionally occupied by states. *See Wyeth*, 555 U.S. at 565; *In re MTBE*, 725 F.3d at 96. In this context, the Court should only find preemption if the conflict between state law and federal policy is "a sharp one." *Marsh v. Rosenbloom*, 499 F.3d 165, 178 (2d Cir. 2007) (internal quotation marks and citation omitted). "[F]ederal law does not preempt state law under obstacle preemption analysis unless 'the repugnance or conflict is so direct and positive that the two acts cannot be reconciled or consistently stand together.'" *In re MTBE*, 725 F.3d at 102 (quoting *Madeira v. Affordable Hous. Found., Inc.*, 469 F.3d 219, 241 (2d Cir. 2006)). "[T]he purpose of Congress is the ultimate touchstone" of conflict preemption analysis. *In re MTBE*, 725 F.3d at 101 (quoting *Wyeth*, 555 U.S. at 565).

Abbott argues that the Act preempts Parents' claims because there is a conflict between the federal law which authorizes Abbott to label its infant

12

formula as organic pursuant to a certified organic plan and the state-law causes of action through which Parents seek to impose liability for that same label.

We are not the first Court of Appeals to address this issue. In *Aurora*, 621 F.3d at 797, the Eighth Circuit concluded that all state-law claims which effectively challenge an OFPA organic certification are preempted by the OFPA because they directly conflict with the certifying agent's role as set out in that statute. The Eighth Circuit emphasized that, "[v]iewed in light of the OFPA's structure and purpose, compliance and certification cannot be separate requirements." *Id.* at 796. However, the *Aurora* Court concluded that not all state-law claims were preempted by the OFPA, but only those related "to the decision to certify[] and certification compliance." *Id.* at 798. Although the *Aurora* Court dismissed some of the claims as preempted, it distinguished "between state law challenges to the certification determination itself, which conflict with the OFPA, and state law challenges to the facts underlying certification." *Id.* at 797. It therefore denied the motion to dismiss as to deceptive-advertising claims which alleged that retailers and dairy producers misrepresented the manner in which the dairy's cows were being raised and fed,

because those claims were unrelated to whether the milk produced by the dairy was properly labeled organic. *Id.* at 799-800.

We agree with the district court and with *Aurora*, and therefore conclude that Parents' claims are preempted. There is simply no way to rule in Parents' favor without contradicting the certification decision, and, through it, the certification scheme that Congress enacted in the OFPA.

Parents make several arguments against this conclusion: first, that conflict-obstacle preemption does not apply because their state-law claims seek to vindicate 7 U.S.C. § 6504(1), the statutory provision requiring that organic-labeled products be produced and handled without the use of synthetic chemicals, except as otherwise provided in the statute. They argue that this inquiry does not undermine the federal certification, because certification only covers the process, not the product, and therefore does not guarantee that a given product is actually organic. Parents argue that this inconsistency, combined with the statute's express-preemption provision and aspects of its legislative history, shows that Abbott cannot overcome the presumption against preemption.

Parents' primary argument rests on a false premise – that their claim that Abbott's products violate federal law is distinct from a claim that Abbott falsely or wrongfully obtained its organic certification. We see no such distinction. Parents allege that although Abbott's product was certified as organic pursuant to the OFPA, the product is not actually organic under the Act. This position necessarily undermines Congress's purpose in enacting the OFPA, because it demands adjudication of a product's organic status separate and apart from the scheme Congress laid out in the law.

Unlike the state-law claims that survived in *Aurora*, these claims are indeed "state law challenges to the certification decision itself," rather than "state law challenges to the facts underlying certification." *Aurora*, 621 F.3d at 797. The false-advertising claims that remained in *Aurora*, for example, related to the farm conditions of the cows whose milk was sold as organic, separate from any representations made by the defendants for consideration in the OFPA certification process. *Id.* at 799-800. Those claims were truly independent of the decision to certify the milk as organic and thus did not conflict with the statutory scheme laid out by Congress in the OFPA. Parents' claims, however, are preempted because they allege that the infant formula, which was lawfully

15

certified under the OFPA, was not OFPA-compliant and was therefore falsely labeled. Parents' claims strike at the very heart of the OFPA certification process and are therefore preempted by it.[3]

Parents, citing 7 U.S.C. § 6504(1), argue that this distinction between federal-law compliance and certification is possible because certification alone does not establish that the products are actually organic, that is, that they do not contain any prohibited synthetic substances. But as the USDA's *amicus* brief makes clear, Parents are mistaken. In reviewing a proposed organic plan, the certifying agent reviews all of the substances or materials to be used in the production or handling process, including all of the ingredients, *see* 7 C.F.R. §§ 205.201, 205.401, and must deny certification if the producer or handler seeking certification intends to include a prohibited ingredient. *See* 7 C.F.R. §§ 205.400, 205.405; *see also* USDA Br. 5-6. Products, such as infant formula, produced and handled pursuant to a properly certified plan *are* organic as a

---

[3] The remedy Parents seek underscores this inherent conflict. During oral argument before the district court on the motion for leave to file a second amended complaint, counsel for Parents stated that they wanted the Similac Organic formula labels to say that the product contains non-organic ingredients. *See* App. 107, 117. Such a remedy would clearly undermine the certification and labeling scheme Congress enacted in the OFPA.

matter of federal law. Parents do not allege that Abbott's organic plan was improperly certified, nor that Abbott deceived the certifying agent as to the actual ingredients,[4] so their argument that Abbott's organic-labeled infant formula is not really organic is, despite Parents' protestations, really a challenge to the certification decision itself. *See also Aurora*, 621 F.3d at 797.

Parents' argument boils down to: their claims are not preempted because they are meritorious, and therefore vindicate federal law, rather than undermining it. But, even if Parents' claims were meritorious, that is not how preemption analysis works. Because determining whether Parents have meritorious state-law claims requires the Court to look behind Abbott's certification granted pursuant to a federal scheme, those state-law claims are an obstacle to the federal scheme's objectives and are preempted.

Parents insist that Abbott cannot overcome the presumption against preemption here, where the statute's express-preemption provision and parts of

---

[4] At oral argument, Parents insisted that they had evidence that Abbott used ingredients in its organic-labeled infant formula that it did not disclose to the certifying agent, but, as noted above, Parents did not plead as much in their first two complaints, nor in their proposed second amended complaint. And before the district court, Parents conceded that Abbott's plan was properly certified and that the challenged ingredients all appeared on the product's ingredient list. *See* App. 95, 114-15, 117 ("We are not challenging the organic certification."), 123.

its legislative history[5] demonstrate that Congress wanted these kinds of state-law consumer-protection cases.  Parents point to 7 U.S.C. § 6507, which precludes all state-certification schemes unless they are more stringent than the OFPA's standards and are approved by the Secretary of Agriculture.  From there, Parents argue that the existence of this express-preemption provision is strong evidence that Congress intended to preempt no more than what it expressly preempted.

"But the existence of an 'express preemption provisio[n] does *not* bar the ordinary working of conflict preemption principles' or impose a 'special burden' that would make it more difficult to establish the preemption of laws falling outside the clause."  *Arizona*, 567 U.S. at 406 (quoting *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 869-72 (2000)).  In other words, the "ordinary principles of preemption" analysis still apply.  *See Arizona*, 567 U.S. at 406.  The express

_____

[5] Most of what Parents cite as legislative history is not Congressional committee reports or statements, but the USDA's explanation of the proposed rule which eventually established the National Organic Program.  Parents' only piece of actual legislative history is a single quotation from the report of the Senate Committee on Agriculture, Nutrition, and Forestry which accompanied the OFPA bill:  "the Committee clearly intends to preserve the rights of States to develop standards particular to their needs that are additional and complementary to the Federal standards."  The quotation appears to support Parents' argument, but it precedes an extensive discussion of how the statute will *limit* state action because the Committee "is most concerned that State action not disrupt interstate commerce."  *See* S. Rep. No. 101-357, at 4949 (1990).  To the extent Parents' quoted sentence from the Senate Committee report supports their argument, the balance of the report does not.

18

preemption provision does not weaken our conclusion that there is an implicit conflict between the OFPA and the state laws Parents seek to employ here.[6]

The enforcement scheme that Congress actually provided, which allocates enforcement power to the federal agency and accredited agents, is further evidence that Congress did not want to permit individual consumers to challenge certification decisions made pursuant to the OFPA. Congress granted the agency authority to investigate certified handlers and producers and those seeking certification, and prohibited those handlers and producers from failing to provide or refusing to provide the agency with accurate information. Congress also gave the agency authority to suspend or revoke a producer or handler's organic certification, and to ban or fine – to the tune of $10,000 per violation – producers or handlers who knowingly violate the statute. The NOP can also suspend or ban certifying agents who falsely or negligently certify an operation. And Congress additionally created a remedial mechanism: any of these actions taken by the Secretary or certifying agent that "adversely affects" a

---

[6] We do not reach the issue of whether Parents' claims are preempted by the OFPA's express-preemption provision, as that provision's scope is separate from whether Parents' claims are implicitly preempted as an obstacle to Congress's scheme. *See, e.g.,* *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 443-44 (2005) (examining the express-preemption provision in 7 U.S.C. § 136v(b)).

person or is "inconsistent with the organic certification program," may be appealed to the agency, and eventually challenged in federal district court. 7 U.S.C. § 6520.

Parents point out that the remedial provision only applies to a wrongful *denial* of certification, not to a wrongful grant, and that even that remedy is only available to the persons or entities who are adversely affected by the decision to deny certification (presumably producers and handlers, but not consumers). *See* 7 U.S.C. § 6506(a)(3); 7 C.F.R. §§ 205.680-81; *see also All One God Faith, Inc. v. Hain Celestial Grp., Inc.*, No. C 09-3517, 2012 WL 3257660, at *2 (N.D. Cal. Aug. 8, 2012) (noting that, while anyone may file a complaint with the USDA or a certifying agent, individuals cannot bring actions to enforce civil penalties for mislabeling). Parents further note that the Act does not grant the USDA or the NOP the authority to stop sales or recall misbranded products, and therefore the agency could never order a product recall like the one Parents seek in this litigation. *See* National Organic Program, 65 Fed. Reg. 80,548, 80,626 (Dec. 21, 2000).

Parents decry their lack of remedy as a defect, but it seems to us that this is simply the manner that Congress chose to enforce the statute. Congress's stated purposes in enacting the OFPA were "to establish national standards governing

20

the marketing of . . . organically produced products," "to assure consumers that organically produced products meet a consistent standard," and "to facilitate interstate commerce" in organically produced food. 7 U.S.C. § 6501. All three of these stated purposes depend on consistency and predictability of the certification scheme. As the district court noted, "[p]ermitting Plaintiffs' claims would lead to a 'divergence in applicable state laws as numerous court systems adopt possibly conflicting interpretations of the same provisions of the OFPA and the NOP.'" *Marentette*, 201 F. Supp. 3d at 383 (quoting *Aurora*, 621 F.3d at 796). The lack of private right of action in the statute and the complex enforcement scheme that Congress did enact, combined with the statute's explicit purposes, suggests that Congress did not want individuals to be able to challenge the merits of a decision to certify a product as organic under the OFPA.

In light of our conclusion that Parents' claims are preempted by federal law, we need not address Abbott's remaining arguments based on primary jurisdiction, failure to exhaust, or failure to state a claim.

* * *

The judgment of the district court is affirmed.